SUMMONS ISSUED

Howard Kleinhendler (HK-5712)
Sara G. Spiegelman (SS-4352)
WACHTEL & MASYR, LLP
1 Dag Hammarskjold Plaza
885 Second Avenue
New York, New York 10017
(212) 909-9500



Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
DIVERSAPACK, LLC,                                    )
                                                     )
                          Plaintiff,                 )
                                                     )   Civ. Action No.
            v.                                       )
                                                     )   COMPLAINT
ELITE STAFFING, INC.,                                )
                                                     )   JURY TRIAL DEMANDED
                          Defendant.                 )
-----------------------------------------------------x

011- 2482

FEUERSTEIN, J.

BOYLE, M.J.

        Plaintiff Diversapack, LLC ("Diversapak"), for its complaint against Elite Staffing, Inc.

("Elite"), by its undersigned counsel, hereby avers:

### Nature of the Action

        1.      For over two years, Diverspack, engaged in packaging goods and manufacturing

shampoo and cosmetics and manufacturing of plastic films, relied on Elite, a national provider of

temporary employment services, to provide workers to five of its nine production facilities

throughout the United States.  Under a staffing agreement executed by the parties, Elite provided

its employees to work in Diversapack's plants and insured that all workers were properly

documented and able to legally work in the United States.

2.      Towards the end of April 2011, Elite's staffing contract with Diversapack terminated.  When Diversapack sought to retain the workers who had formerly been with Elite, it discovered that hundreds were undocumented illegal aliens who were not permitted to work in the United States.  The sudden depletion of its workforce has caused substantial interruption and damage to Diversapack's operations, and the fact that it had illegal workers in its facilities has engendered significant reputational harm to Diversapack's business.

3.      Diversapack brings this action seeking a declaration that Elite is not entitled to collect any funds allegedly due and owing under the staffing contract, and for damages caused by Elite's breach of contract relating to its illegal staffing of Diversapack's labor needs with undocumented illegal aliens.

### The Parties

4.      Diversapack is a Georgia limited liability company with a principal place of business at 6080 Jericho Turnpike, Commack, New York 11725.  The members of Diversapak are residents of New York and Georgia.

5.      Elite is an Illinois corporation with a principal place of business at 1400 West Hubbard Street, Chicago, Illinois 60622.

### Jurisdiction and Venue

6.      The court has diversity jurisdiction under 28 U.S.C. § 1332(a), as the plaintiff and defendant are citizens of different States and the amount in controversy exceeds $150,000.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1392(b)(2).

### FACTS

8.      Diversapack, through its wholly owned affiliates, is engaged in three lines of business: the manufacturing of plastic films, the re-packaging of goods, and the manufacture of

2

shampoo, skincare and cosmetics. Each of these lines of business requires extensive manual labor. At all relevant times, Diversapack, through its affiliates, operated through nine factories located in Illinois, Ohio, California, Indiana, Pennsylvania and North Carolina.

9.      In order to satisfy its labor needs, Diversapack relied in some important measure on staffing agencies to supply qualified employees to its nine factories. On or about June 8, 2009, Diversapack and Elite executed a Staffing Agreement (the "Staffing Agreement") (attached as Exhibit A). Under the agreement, Elite agreed to provide Diversapack with qualified personnel for use in Diversapack's operations.

10.      The agreement was negotiated by Diversapack's executives in Suffolk County, New York and was executed by Diversapack there. Payment for services under the contract was directed from Diversapack's executive offices in Suffolk County, New York.

11.      The Staffing Agreement provides that Elite shall recruit and select employees for Diversapack, and these workers shall remain the employees of Elite. Elite is solely responsible for payment of wages, for worker's compensation injury claims and liabilities, and is responsible for withholding federal and state income taxes, social security taxes and unemployment insurance.

12.      Critically, Elite agreed to "comply with all applicable federal, state and local employment related laws and ordinances." Additionally, Elite agreed to be fully responsible for ensuring that all workers sent to Diversapack had the legal right to work in the United States and were in compliance with the Immigration Reform Act of 1986 ("IRCA"). Elite further represented that all workers sent to Diversapack had completed Federal Form I-9, which requires the employer to identify the documentation submitted by the worker to confirm his identity and his ability to legally work in the United States.

3

13.     Section 3(h) of the Staffing Agreement is unequivocal in requiring Elite to insure

that its workers were not illegal aliens:

> Elite will assume complete responsibility for ensuring that all Elite
> Employees have properly completed an I-9 Form and that such
> forms have been verified according to IRCA.  Customer does not
> and will not seek to review the I-9 Forms and other employment
> documentation of the Elite Employees.  Given that Elite takes full
> responsibility for IRCA compliance as it pertains to Elite
> Employees, Customer retains the right to terminate this Agreement
> for failure to comply with IRCA.

14.     Pursuant to the Staffing Agreement, Elite placed hundreds of workers with

Diversapack between June 2009 and April 2011.  During this period, Diversapack paid Elite

more than $25 million.

15.     By April 2011, differences arose between the parties in connection with Elite's

billing and amounts claimed due and owing.  By mutual consent, the parties terminated the

Staffing Agreement, on or about April 22, 2011.  The Staffing Agreement provides that all Elite

Employees placed with Diverspack who have been in the job for more than 60 days could be

hired by Diversapak or another staffing agency.  Elite, knowing that Diversapack was going to

another staffing agency, agreed that Diversapack could forego the normal 30-day waiting period

required by the American Association of Staffing Agencies before permitting its employees to be

hired by another staffing agency.

16.     Upon termination of the Staffing Agreement with Elite, Diverspack engaged

Belcan Staffing ("Belcan") to provide employees to its factories.  However, once the employees

were required to complete I-9 Forms with the current provider, many started leaving work and

never returned.  In the days following the termination of the Elite Staffing Agreement,

Diversapack learned for the first time that hundreds of Elite employees which had been sent to

work at Diversapack's facilities had been illegal aliens who were not authorized to work in the United States.

17.     Diversapack scrambled to fill the hundreds of now vacant positions that had previously been filled by Elite through illegal alien workers. To date, the depletion of its labor force has caused Diversapack lost production and sales and has required it to incur higher replacement worker costs. Additionally, Diversapack has suffered reputational damages and a depletion of its goodwill from having had illegal aliens working at its facilities.

18.     Further, Elite has improperly billed and collected millions of dollars from Diversapack from its placement of illegal workers. Diversapack is entitled to a refund all fees that it paid for illegal workers.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

19.     Plaintiff repeats each of the preceding paragraphs.

20.     Under the Staffing Agreement, Elite agreed to ensure that all workers placed with Diversapack "have properly completed an I-9 Form and that such forms have been verified according to IRCA."

21.     Elite breached the Staffing Agreement by failing to have its employees complete the I-9 forms and by placing undocumented illegal aliens to work at Diversapack's facilities.

22.     As a direct result of Elite's breach, Diversapack has lost production and sales and has incurred higher replacement worker costs. Additionally, Diversapack has suffered reputational damages and a depletion of its goodwill from having had illegal aliens working at its facilities.

5

23.     Further, Elite has improperly billed and collected millions of dollars from Diversapack from its placement of illegal workers. Diversapack is entitled to a refund all fees that it paid for illegal workers.

24.     Diversapack has suffered damages as a result of Elite's breach in an amount to be determined at trial, but not less than $1 million.

## SECOND CLAIM FOR RELIEF
### Declaratory Judgment

25.     Plaintiff repeats each of the preceding paragraphs.

26.     In April 2011, Elite demanded payment from Diversapack of approximately $3 million for placing workers at Diversapack's facilities pursuant to the Staffing Agreement.

27.     Diversapack has refused to make any further payments under the agreement in light of the fact that Elite had placed hundreds of undocumented illegal alien workers at Diversapack's facilities.

28.     Elite's employment of hundreds of undocumented aliens was illegal, in violation of 8 U.S.C. § 1324, which provides, in part: "It is unlawful for a person or other entity--(A) to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien (as defined in subsection (h)(3) of this section) with respect to such employment."

29.     Elite knew that the workers it was sending to Diversapack's facilities were undocumented aliens who were not permitted to work in the United States.

30.     Elite may not seek recovery under the Staffing Agreement since its performance there under was accomplished through illegal conduct.

31.     A justiciable controversy exists between the parties.

6

32.     Judgment should be entered declaring that Elite may not collect any outstanding balance due and owing under the Staffing Agreement.

WHEREFORE, plaintiff demands judgment as follows:

a.       On the First Claim For Relief, damages in an amount to be determined at trial, but not less than $1 million plus prejudgment interest;

b.       On the Second Claim For Relief, a declaration that Diversapack does not have to make any further payments to Elite relating to services provided under the Staffing Agreement;

c.       For costs and attorneys' fees relating to this action as provided for in the Staffing Agreement; and

d.       For whatever further relief the Court deems necessary and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated: New York, New York
       May 23, 2011

Howard Kleinhendler (HK-5712)
Sara G. Spiegelman (SS-4352)
WACHTEL & MASYR, LLP
1 Dag Hammarskjold Plaza
885 Second Avenue
New York, New York 10017
(212) 909-9500

Attorneys for Plaintiff
*Diversapack, LLC*

8

**Exhibit A**

## ELITE STAFFING, INC.
## STAFFING AGREEMENT

THIS AGREEMENT is dated June 8, 2009, by and between Elite Staffing, Inc. (hereinafter referred to as "Elite") and Diversapack, LLC and its affiliates (hereinafter collectively referred to as "Customer").

IN THAT, the Customer desires to use the services of Elite to provide qualified personnel who are employees of Elite in furtherance of Customer's operations; and

IN THAT, Elite is in the business of supplying qualified personnel for use in Customer's operations; and

IN THAT, Elite is able to provide and to employ qualified persons meeting Customer's requirements for such persons as Customer may use in its operations; and

In consideration of the mutual agreements and covenants contained herein, Elite and Customer agree as follows:

1.     <u>Term of Agreement; Termination</u>.  This Agreement shall be effective as of June 8, 2009 and shall continue in effect for a period of one (1) years (the "Initial Term"). Following the Initial Term, this Agreement shall remain in full force and effect for successive one year terms (each, an "Additional Term", and together with the Initial Term, the "Term") until either (i) the Agreement is renewed, or (ii) the Agreement is terminated in writing by either party sixty (60) days prior to the end of any Term. **Unless otherwise stated herein, during the Term, either party may terminate this Agreement only if the other party (i) materially fails to perform or materially breaches any of the terms of this Agreement and then (2) fails to cure such breach or failure to perform within thirty (30) days of its receipt of a written notice of such breach or failure to perform.**

2.     <u>Classification of Employees</u>.  Elite will provide Customer "Elite Employees" (hereafter defined), as requested and designated by Customer from time to time.  "Elite Employees" are those employees who are recruited and selected by Elite for Customer.  In recruiting and selecting Elite Employees, Elite shall match the skills and experience levels of its personnel to the specific jobs needs of Customer agreed to by Elite and Customer from time to time, and Elite will make all hiring decisions based on such qualities and specifications.

3.     <u>Elite Agrees</u>.

a.  Elite shall utilize its best efforts to satisfy Customer's labor requests for qualified personnel in a timely manner.

b.  Elite shall maintain an employee file on each of its personnel.  Elite shall not solicit Customer's employees for employment with Elite.

c.  All personnel assigned to Customer pursuant to this Agreement shall be considered employees of Elite.  Except as provided herein, Elite shall assume the sole and

404268.3

exclusive responsibility for (i) the payment of wages to its personnel for services performed by such personnel, and (ii) for all workers' compensation injury claims, liabilities and obligations. Elite shall, with respect to its personnel, be responsible for withholding federal, state and local income taxes, making deductions for health insurance (if any) and other deductions authorized by an employee, paying Social Security taxes, and unemployment insurance. Upon request, Customer may request verification that all employment taxes are being paid on behalf of all Elite Employees assigned to Customer.

> d. Elite agrees to comply with all applicable federal state and local employment related laws and ordinances, including, but not limited to, health and safety provisions.

> e. Elite shall provide insurance in amounts and on terms consistent with its requirements hereunder and as required by state law. Elite agrees to name Customer an "additional insured" and an "alternate employer" on such policies and to provide Customer with a Certificate of Insurance confirming that such has been done. Elite also agrees to provide Customer with reasonable notice prior to the cancellation of any such insurance. Elite acknowledges that the failure to maintain Workers Compensation Insurance and include Customer as an additional insured or provide notification of the cancellation of insurance is a material breach of this Agreement and may permit Customer to immediately terminate this Agreement and recover damages from Elite.

> f. Elite agrees not to discriminate against Elite's personnel on the basis of race, color, national origin, sex, sexual orientation, age, disability, citizenship status or veteran status or on any other basis prohibited by law and to comply with all federal and state civil rights laws.

> g. Elite will invoice Customer weekly for its services. The rates for Elite's services and the payment terms for the same are set forth on <u>Attachment A</u>. Rates that are set forth on <u>Attachment A</u> may be modified if there is a change in federal, state or local tax laws and/or federal, stated or local mandated employee benefits.

> h. Elite will assume complete responsibility for ensuring that all Elite Employees have properly completed an I-9 form and that such forms have been verified according to IRCA. Customer does not and will not seek to review of the I-9 forms and other employment documentation of the Elite Employees. Given that Elite takes full responsibility for IRCA compliance as it pertains to the Elite Employees, Customer retains the right to terminate this Agreement for failure to comply with IRCA.

> i. If Customer notifies Elite that certain positions must be filled only with Elite personnel that are properly certified or licensed or have permits as may be required under applicable law to fill said positions, Elite shall ensure that said personnel will indeed have valid and up-to-date certification, licenses or permits.

4.    <u>Customer Agrees</u>.

> a. All personnel provided by Elite for the Term are the employees of Elite. Customer will have the opportunity to hire any employee of Elite, at no additional service

404268.3

2

fee, if such employee has been utilized by the Customer for a period of not less than sixty (60) working days.  Customer shall notify Elite in writing of its intentions to hire any Elite employee.

b. Customer, at its election, will provide sufficient information about its specific job needs and qualifications so that Elite can match the skills and experience of its personnel to meet such needs.

c. Except for personnel who are provided to Customer pursuant to 3(i), Customer shall be fully responsible for training all personnel provided hereunder in all aspects of job to which any such personnel may be assigned.  Customer shall not request or require any of Elite's personnel to perform any job assignment until such personnel have been fully trained to perform such job assignment.

d. Customer agrees that Elite's duty to fill assignments is subject to the availability of qualified personnel.

e. Customer will not directly or indirectly cause or encourage an Elite employee to transfer to or work for another personnel service without the consent of Elite, which such consent shall not be unreasonably withheld.

f. Unless otherwise provided herein to the contrary, Customer will immediately notify Elite of any problems regarding any of Elite's personnel, including, but not limited to, injuries and misconduct.

g. Customer agrees to consult with Elite regarding Elite's employees' conduct.  Customer acknowledges that Elite is dependent upon this communication to ensure that Elite's personnel meet Customer's acceptable standards of performance.

h. If, in the sole discretion of Customer, any person assigned by Elite is incompetent, negligent, disruptive or has engaged in misconduct, Customer may require that such person leave its premises and shall inform Elite of this action immediately.

i. Customer agrees not to discriminate against Elite personnel on the basis of race, color, national origin, sex, sexual orientation, age, disability, citizenship status or veteran status, or on any other basis prohibited by law and to comply with all federal, state and local civil rights laws.

j. In consideration for the services rendered by Elite hereunder, Customer shall pay Elite the amounts set forth on Attachment A.  Customer shall pay for all invoiced services performed by Elite's personnel upon receipt of an Elite service invoice.  Unless otherwise directed by Elite, all unpaid, undisputed accounts will be considered in default after thirty (30) days from the invoice date, after which time a default charge will be imposed on Customer at a rate of one percent (1%) per month (ANNUAL PERCENTAGE RATE OF 12%) or the maximum legal interest rate, whichever is lower on all unpaid balances. Customer agrees to pay the default charge together with any and all reasonable costs of collection, including, but not limited to, attorneys' fees.

404268.3

3

k.   Customer agrees not to pay wages directly to any Elite employee.

5.      Safety Issues and Job Classifications.

a.  Except for personnel provided to Customer pursuant to 3(i), Customer shall not assign any Elite employee without first providing appropriate training for such job in accordance with industry standards.

b.  Customer and Elite agree to comply with all applicable federal, state and local laws and ordinances, including, but not limited to, health and safety.

6.      Indemnification.

a.  Elite agrees to indemnify, defend and hold harmless Customer and its officers, directors, shareholders, employees, agents, parent, affiliates, representatives, successors and assigns of, from and against any claims, lawsuits, damages, penalties or expenses (including, but not limited to, reasonable attorneys' fees) relating to or arising out of (i) its performance of or failure to perform any of its obligations under this Agreement, or (ii) any intentional or negligent act or omission of Elite or Elite's employees or agents, except for claims arising from (a) Customer's own intentional or negligent act or omission or the intentional or negligent act or omission of Customer's employees or agents (excluding Elite), or (b) arising out of Customer's breach of any of the terms and conditions contained herein.

b.  Customer agrees to indemnify, defend and hold harmless Elite and its officers, directors, shareholders, employees, agents, parent, affiliates, representatives, successors and assigns of, from and against any claims, lawsuits, damages, penalties or expenses (including, but not limited to, reasonable attorneys' fees) relating to or arising out of (i) its performance of or failure to perform any of its obligations under this Agreement or (ii) any intentional or negligent act or omission of Customer or Customer's employees or agents, all except for claims arising from (a) Elite's own intentional or negligent act or omission or the intentional or negligent act or omission of Elite's employees or agents, or (b) arising out of Elite's breach of any of the terms and conditions contained herein.

c.  Elite's and Customer's respective duties and obligations under this Section 6 shall survive the termination, revocation or expiration of the Agreement.

7.      Authority.  Each party represents and warrants to the other party that it has all necessary power and authority to enter into and perform this Agreement in accordance with the terms hereof.

8.      Compliance with Law.  Each party shall, at its own expense, comply with all laws, orders and regulations of federal, state and municipal authorities, and with any lawful direction of any public officer which shall impose any duty upon that party regarding the performance under this Agreement.

9.      Entire Agreement.   This Agreement constitutes and represents the entire Agreement between the parties hereto and supersedes any prior understanding or agreements,

404268.3

4

written or oral, between the parties hereto respecting the subject matter herein. This Agreement may only be amended by an agreement in writing executed by all of the parties hereto. This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto and their respective heirs, personal representatives, successors and assigns, subject, however, to the limitations contained herein. The unenforceability, invalidity or illegality of any provision of this Agreement shall not render the other provisions unenforceable, invalid or illegal. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same document.

10.     <u>Waivers</u>.  No waiver of any provision of this Agreement shall be effective unless it is in writing, signed by the party against whom it is asserted, and any such written waiver shall only be applicable to the specific instance to which such waiver is related and shall not be deemed to be a continuing or further waiver.

11.     <u>Separability</u>.  Each and every covenant and agreement herein shall be separate and independent from any other and the breach of any covenant or agreement shall in no way or manner discharge or relieve the performance of any other covenant or agreement.

12.     <u>Governing Law</u>.  This Agreement shall be governed by the internal laws of the State of Illinois, without regard to the conflicts of laws rules thereof that would require the application of the laws of any other jurisdiction.

13.     <u>Headings</u>.  Captions and articles headings contained in this Agreement are for convenience and reference only and in no way define, describe, extend or limit the scope or intent of this Agreement nor the intent of any provision hereof.

14.     <u>Notice</u>.  All notices or other communications shall be deemed given by: (1) personal delivery, (2) telephone facsimile, electronic mail, or overnight courier and such notice is followed up by certified mail, return receipt requested, or (3) a written notice mailed via certified mail, return receipt requested; such notices to be addressed to the parties at the addresses set forth below:

If to Customer:                 Diversapack, LLC.
                                6080 Jericho Turnpike
                                Commack, NY 11725
                                Attn: Al Cowger
                                Facsimile: 631.543.1081
                                Email: Acowger@diversapack.com

If to Elite:                    Elite Staffing, Inc.
                                1400 West Hubbard St.
                                Chicago, Illinois 60622
                                Attn: Gary Cole
                                Facsimile: 773-235-7443

404268.3

5

15.   <u>Subcontracting and Assignment</u>.  This Agreement may not be assigned, delegated or encumbered by Elite or Customer without the prior written consent of the other, except that, either Customer or Elite may assign this Agreement to any of its parent, subsidiary or affiliated corporations or to the transferee of the whole or any part of such party's business.

16.   <u>Independent Contractor</u>.  Elite shall remain an independent contractor and shall have no power, nor shall Elite represent that Elite has any power, to bind Customer or to assume or to create any obligation express or implied on behalf of Customer.

IN WITNESS WHEREOF, the parties have hereunto set their hands on the day, month and year first above written.

Elite Staffing, Inc.                                    Diversapack, LLC

By_____            By_____
Title_____            Title_____

404268.3                                        6

## ATTACHMENT A

### COMPENSATION FOR THE CHINO, CA FACILITY

#### ELITE EMPLOYEES

Elite's employee regular or overtime hourly wage (as the case may be) plus 29.5% of such applicable wage.

#### TESTING AND INVESTIGATION FEES

If Customer requests any screening, testing or investigation other than as expressly set forth in this Agreement, Customer and Elite shall negotiate in good faith the cost and terms of Elite performing the same

404268.3